UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

JANE DOE,

    Plaintiff,

vs.

THE SCHOOL BOARD OF MIAMI-DADE
COUNTY, FLORIDA,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Jane Doe,[1] ("Plaintiff") sues Defendant, The School Board of Miami-Dade County, Florida (the "School Board" or "Defendant"), and alleges as follows:

### I.   NATURE OF CASE, JURISDICTION, AND VENUE

1. This action concerns the repeated sexual abuse and harassment of Plaintiff by her English and Creative Writing teacher, Jason Edward Meyers ("Meyers"), during Plaintiff's junior and senior years at Miami Palmetto Senior High School ("Palmetto High School"), while she was 16 and 17 years old.  Plaintiff is one of many underage female students that Meyers recruited, groomed, and exploited in a systematic fashion during his near decade-long tenure as a known sexual predator employed by Defendant.

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff sues Defendant pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1983.

---

[1] Plaintiff brings this case anonymously to protect her identity, because the subject sexual misconduct occurred while Plaintiff was a minor.  Plaintiff fears further injury and harm if her identity as a sex abuse victim becomes publicly known.  Plaintiff's identity, however, is or will be made known to Defendant upon its appearance in this action.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant resides in, and the events and omissions giving rise to this action occurred within, the Southern District of Florida.

## II.     PARTIES AND OTHER RELEVANT NON-PARTIES

4.     Plaintiff was born in March 1998.  Although Plaintiff is currently an adult, Plaintiff was at all relevant times a resident of Miami-Dade County, Florida, a student at Palmetto High School, and a minor.

5.     Defendant, the School Board, is a political subdivision or agency of Miami-Dade County, Florida.  It has received, and continues to receive, federal financial assistance under Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301 *et seq*. Defendant, acting through its officials, administrators, employees, agents, and representatives, manages, operates, controls, and supervises Miami-Dade County Public Schools (the "School District"), including Dr. Michael M. Krop Senior High School ("Krop High School") and Palmetto High School.  Defendant's responsibilities include, but are not limited to, hiring, firing, transferring, suspending, disciplining, and directing the work of public school personnel, and collaborating with the Superintendent and the Principals of the School District regarding same.

6.     In addition, Defendant has adopted rules and regulations for the School District, such as the School Board Rules of Miami-Dade County, Florida.  The School Board has also set policies and procedures for the School District, inclusive of the School Board of Miami-Dade County Bylaws & Policies.  Defendant is responsible for enforcing and ensuring compliance with federal and Florida law and its own rules, regulations, policies, and procedures, including those related to sexual discrimination against students by teachers.

7.     The Superintendent of the School District is Defendant's secretary and executive

officer. Among other things, the Superintendent is responsible for the administration and management of the public schools in the School District. This includes, but is not limited to, hiring, firing, transferring, suspending, disciplining, and directing the work of public school personnel, and collaborating with Defendant and the Principals and Assistant Principals of the School District regarding same. The Superintendent is also responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, including those related to sexual discrimination against students by teachers.

8. Since September 2008, the Superintendent has been Alberto Carvalho. His predecessor was Dr. Rudy Crew, who had served as the Superintendent since April 2004.

9. Each public school in the School District has a Principal and at least one Assistant Principal, who are the administrative and supervisory heads of each school. Among other things, the Principal and Assistant Principals (as well as each school's teachers) are responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, including those related to sexual discrimination against students by teachers. The Principal and Assistant Principals are also involved in the hiring, firing, transferring, and disciplining of staff, teachers, and other employees at their school.

10. Beginning on or about November 2005 until approximately July 2011, the Principal of Krop High School was Dr. Matthew Welker. Beginning on or about July 2011 until July 2015, the Principal was Dawn Baglos. Beginning on or about July 2015 through the present, the Principal has been Dr. Allison Harley.

11. Beginning in or about August 2005 through July 2011, the Principal of Palmetto High School was Howard Weiner. Beginning in or about August 2011 until July 2015, the Principal was Dr. Allison Harley. Beginning in or about August 2015 through the present, the

Principal has been Victoria Dobbs.

12. The Miami-Dade Schools Police Department (the "Schools Police") is a law enforcement agency for Miami-Dade County serving the School District and employed by Defendant. The Schools Police and its officers, agents, employees, and representatives are the guardians of a safe learning environment for students, staff, and employees of the School District. Among other things, the Schools Police is responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, including those related to sexual discrimination against students by teachers.

13. At all relevant times, each agent, employee, representative, official, administrator, and teacher of Defendant, including its members, the Superintendent, the Principals, the Assistant Principals, the teachers, and the Schools Police, was the authorized agent of the other and of Defendant and each was acting within the course, scope, and authority of such agency. Additionally, each of the foregoing individuals and entities, authorized, ratified, or affirmed each act or omission of any other of the foregoing individuals or entities.

### III.    FACTS

**A.  The History of Meyers' Sexual Predation Since 2004.**

14. Beginning in or around August 2002, Defendant retained Meyers to serve as a teacher at Krop High School. Therefore, at all relevant times, Meyers was the authorized agent of Defendant, acting within the course, scope, and authority of such agency. While so employed, Meyers sexually preyed upon current and former female students of the School District until his arrest in February 2016.

15. Beginning in or around November 2004, Meyers sexually abused and molested

Victim JF,[2] a student in his Creative Writing class at Krop High School. She was 17 years old at the time. Meyers and Victim JF engaged in oral sex acts on multiple occasions. In the months leading up to his illicit conduct, Meyers groomed Victim JF using journal prompts, poetry, and her own sexually-charged writings as "fuel that fired [their] inappropriate connection."

16. Suspicions about Meyers' illicit relationship with Victim JF surfaced in or about the 2004-2005 school year. During that school year Meyers was observed by a Schools Police officer leaning over Victim JF in a "very personal" and "intimate fashion" in the school's hallway.

17. Meyers sexually abused Victim MS-1[3] in or about 2006, while she was a 17-year-old student at Krop High School. The nature and extent of that abuse is not known by Plaintiff.

18. Meyers also sexually abused Victim DR[4] in 2006 or 2007 following her graduation from Krop High School. The nature and extent of that abuse is not known by Plaintiff.

**B. Defendant Has Been on Notice of Meyers' Predation of Female Students Since 2008.**

19. In or about October 2008, in an email to the Principal and Secretary of Krop High School (produced in response to Plaintiff's public records request), the writer reported that Meyers was "having sex with students and former students" of Krop High School. The writer implored Defendant "to prevent" Meyers from continuing to sexually prey upon female students

---

[2] This victim's identity will be made known to Defendant upon its appearance in this action to the extent known.

[3] This victim's identity will be made known to Defendant upon its appearance in this action to the extent known.

[4] This victim's identity will be made known to Defendant upon its appearance in this action to the extent known.

of the School District.

20.     At a time and date unknown by Plaintiff, the content of the email was disseminated to the Superintendent of the School District, the Schools Police, and other employees of Defendant.

21.     In response, Defendant transferred Meyers to Palmetto High School, where he continued to have unfettered access to female students.

22.     Throughout his tenure at Palmetto High School, Defendant received reports of suspected continued predation and inappropriate contact with students by Meyers.  The dates and times of such reports are not known by Plaintiff.  What is known is that following Meyers' arrest in 2016, Plaintiff and her father were informed by an investigating officer for the School District that Meyers' behavior had been the subject of inquiry for a substantial time before his arrest.  It was also reported that Meyers' wife, who also was employed as a teacher at Palmetto High School, had confronted Meyers about his inappropriate relationship with at least one female student during the 2015-2016 school year.  The confrontation was reported to Plaintiff and was alleged to have taken place during school hours on the campus of Palmetto High School.

### C. **Defendant Was Deliberately Indifferent to Meyers' Sexual Predation Upon Female Students.**

23.     At all relevant times, Defendant failed to promptly and adequately report, investigate, redress, and otherwise respond to its notice that Meyers posed a serious danger of sexual abuse and exploitation to female students of the School District.

24.     Notwithstanding the reports of sexual misconduct by Meyers at Krop High School, Defendant transferred Meyers to Palmetto High School, where he continued to have unfettered access to female students.

25.     Notwithstanding continued reports of Meyers' sexual misconduct while at

Palmetto High School, Meyers' employment was not terminated.

26. Defendant knowingly and deliberately exposed its female students, including Plaintiff, to a substantially increased risk of unwarranted and unlawful sexual abuse, exploitation, and harassment by Meyers.

27. At the same time, Defendant knowingly and deliberately created and exacerbated an intimidating, hostile, offensive, and abusive educational environment.

### D. Meyers' Sexual Predation of Female Students of Palmetto High School.

28. While employed as a teacher at Palmetto High School, Meyers continued his predatory behavior of recruiting, grooming, and sexually exploiting underage female students. Meyers' general *modus operandi* included singling out female students for special treatment and attention, such as participating in the "Scholastic Art & Writing Awards," a national writing competition for which he was their teacher-adviser.

> ***i. Meyers' victims were known by Defendant's employees as "Jason's girls."***

29. Meyers' predatory behavior at Palmetto High School was so open and notorious that, beginning in or around the 2014-2015 or 2015-2016 school years, a group of female students, including Plaintiff, became known by school officials, administrators, teachers, and other employees of Defendant as "Jason's girls"—i.e. Jason Meyers' "girls."

30. These female students were known as "Jason's girls" because, among other reasons, they were often observed spending substantial amounts of time informally "hanging out" with Meyers on school premises, including alone in his classroom with the door locked.[5] Meyers also frequently escorted his "girls" around the school premises, for example, by walking his "girls" to their cars.

---

[5] Meyers also covered the window on his classroom door with a poster.

31. During these encounters, albeit not exclusively, Meyers repeatedly subjected his victims, including Plaintiff, to verbal, emotional, psychological, and sexually exploitative conduct.

### ii. Meyers sexually abused and harassed Plaintiff while she was a 16- and 17-year-old student of Palmetto High School.

32. The 2014-2015 and 2015-2016 school years were Plaintiff's junior and senior years at Palmetto High School. During those years, Plaintiff was 16 and 17 years old; she was a student in Meyers' Creative Writing class; and she was a member of the school's Creative Writing Club, which Meyers spearheaded.

33. On numerous occasions throughout Plaintiff's junior and senior years at Palmetto High School, Meyers exploited the trust and authority attendant to his position to harass and groom Plaintiff for sexual abuse and exploitation:

   a. After recruiting Plaintiff to compete for the Scholastic Art & Writing Awards, for which he was her teacher-adviser, Meyers told Plaintiff her writing was "good, but boring," and directed her to write "edgier" and sexually explicit content for him.

   b. Meyers directed Plaintiff to study sexually explicit materials, such as "Lolita," "Lawns," and "Tess of the d'Urbervilles: A Pure Woman Faithfully Presented." *See* VLADIMIR NABOKOV, LOLITA (1955); THOMAS HARDY, TESS OF THE D'URBERVILLES: A PURE WOMAN FAITHFULLY PRESENTED (1891); MONA SIMPSON, LAWNS (1984). Specifically, Meyers emphasized passages about the courtship of a young girl by an older man, the molestation of a young girl by her father, and rape.

   c. After Plaintiff did as Meyers instructed, Meyers told Plaintiff that he had been

"thinking about her" and that her writing "turned [him] on."

d. Meyers told Plaintiff about his sexual history, experiences, and desires, and implored Plaintiff to reciprocate.[6]

e. Meyers implored Plaintiff to "wear skirts" to school.

f. Meyers wrote notes to Plaintiff during class, such as "I've been thinking about you" and "I want to kiss you."

g. Meyers told Plaintiff he wanted to "kiss" her.

h. Meyers told Plaintiff that he had sexual fantasies about her.

i. Meyers told Plaintiff he "touched" himself while thinking about her.

j. Meyers pressed Plaintiff to have sex with him, including at school, at his home, and at Plaintiff's home when her parents were away.

k. At a school-sponsored event at the Banyan Bowl in Pinecrest Gardens, Meyers told Plaintiff she looked "amazing" and implored her to "walk" with him through the nearby gardens so he could sexually molest her.

l. Meyers gave Plaintiff a poem entitled "For That He Looked Not Upon Her" by George Gascoigne as emblematic of his deviant sexual feelings for her.

34. Throughout Plaintiff's junior and senior years at Palmetto High School, Meyers exploited the trust and authority attendant to his position to sexually abuse, molest, and exploit Plaintiff as set forth more particularly herein:

a. Meyers directed Plaintiff to take nude photographs of herself;

b. Meyers directed Plaintiff to display the photos to him;

c. Meyers took possession of Plaintiff's phone where he continued to ogle the

---

[6] Beginning on or about May 2015, Plaintiff was in a romantic relationship with another student. Meyers repeatedly pressed Plaintiff to discuss her relationship, especially any sexual matters.

        photos until the phone was returned to Plaintiff;

d. Meyers forcibly kissed Plaintiff; and

e. Meyers forcibly spread Plaintiff's legs apart, positioned his groin between her thighs, pressed his body against hers, forced his hands underneath Plaintiff's clothes, fondled Plaintiff's body, and forcibly kissed her.

### iii. *Four Other Female Student Victims of Meyers Have Been Identified at Palmetto High School.*

35. Following Meyers' arrest, four other female students were identified as victims of sexual abuse. They are Victim MS-2, Victim HR, Victim GCP, Victim EC, and Victim EB.[7] Except as identified in the following paragraphs, the precise details of Meyers' conduct them is not known by Plaintiff.

36. In or around the 2013-2014 school year, Meyers recruited, groomed, and ultimately had an inappropriate relationship with Victim MS-2, who at the time was a minor and student at Palmetto High School. Meyers continued to have an inappropriate relationship with Victim MS-2 after she graduated by attempting to coerce her to have sex with him.

37. Beginning in or around the fall of 2015, Meyers groomed another underage female student in his Creative Writing class, Victim HR, whom he had also singled out to compete for the Scholastic Art & Writing Awards. Meyers made numerous sexual comments to Victim HR; directed her to write more sexually explicit content; and even directed her to incorporate sexually-explicit phrases into her writing, inclusive of sexual acts Meyers stated he wanted to do to her.

38. Beginning in or around November 2015, Meyers sexually abused and molested

---

[7] The names of these victims will be made known to Defendant upon its appearance in this action to the extent known.

Victim HR. Victim HR was both a student and a minor at the time. These acts occurred inside his classroom and on several occasions. Meyers had sexual intercourse with Victim HR, had oral sex with her, and had her perform oral sex on him.

39. Beginning in or around the fall of 2015, Meyers groomed another female student in his Creative Writing class, Victim GCP. Meyers repeatedly inquired about Victim GCP's sex life and asked if he could have sex with her. He asked that she write in detail about her own sexual experiences. He gave her CDs containing songs of a sexual and romantic nature. He also gave her provocative clothes to wear to his class and demanded that she break up with her boyfriend. And he directed her to title a poem she had written: "Come Inside Me."

40. Beginning in or around October 2015, Meyers groomed another female student of Palmetto High School, Victim EC. Meyers discussed sexual matters with Victim EC. He questioned her about her own sexual experiences. He asked her if she was sexually active and how many people she had been with. He instructed her that female college students should "put out" by the second date. And he told her she could visit him anytime for a "hug."

41. Sometime in or around 2015, Meyers also propositioned another female student of Palmetto High School, Victim EB, to engage in sexual activity with him on several occasions.

42. In February 2016, Meyers was arrested and charged with numerous counts of sexual battery on a minor.[8] *See State v. Meyers*, Case No. F-16-003408 (Fla. 11th Jud. Cir. Ct.

---

[8] Since approximately March 2015, several other male teachers at Palmetto High School have been accused or arrested for engaging in improper or sexual relations with female students. *See, e.g.*, Kyra Gurney, *Palmetto High Teacher Resigns Amid Investigation Into Improper Relationship* (May 4, 2017, 12:26 PM), http://www.miamiherald.com/news/local/education/article148597224.html (reporting that a 34 year-old male teacher at Palmetto High School, Alex Osuna, resigned after allegations of an "improper relationship" with a student; and that before his resignation, the School District had "reassigned" Osuna to another location, away from students, pending its investigation); Charles Rabin, *Palmetto High Teacher Accused of 9-Month Sexual Relationship with Student* (Mar. 16,

2016).  During his arrest at his home, a detective saw three of Meyers' biological children running around inside the house naked and touching their own genitals.  Law enforcement immediately notified the Florida Department of Children and Families.

## IV.   CAUSES OF ACTION[9]

### COUNT I

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681

43. Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

44. As a student at Palmetto High School, Plaintiff had the right not to be subjected to sex discrimination, including sexual abuse, molestation, exploitation, and harassment.  Plaintiff also had a substantive due process right to, and liberty interest in, her bodily integrity.

45. At all relevant times, Defendant had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately.

46. By as early as October 2008, Defendant had actual notice that Meyers was sexually preying upon current and former students of the School District.  This notice alerted and informed Defendant that Meyers had the propensity to sexually abuse and harass female students and, therefore, posed a serious danger to female students of the School District.  Defendant also received other reports and complaints about Meyers' predatory behavior between October 2008

---

2015, 4:10 PM), http://www.miamiherald.com/news/local/crime/article14624555.html (reporting that a 28 year-old male teacher at Palmetto High School, Christopher Scottlevin Best, had a 9-month sexual relationship with a 17 year-old female student, which included having sex at least 10 times—twice behind locked doors in the school's music room).

[9] Pursuant to Florida Statute § 768.28, on June 27, 2017, Plaintiff gave Defendant notice of her intent to sue under Florida tort law.  Defendant has not yet provided a final response to Plaintiff's claim.

and his arrest in February 2016.

47.     Defendant had a duty to promptly and adequately report, and then safeguard its students from the risk of further sexual abuse, molestation, and exploitation by Meyers, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures. *See, e.g.*, Florida K-20 Education Code, Fla. Stat. § 1000.01 *et seq.*; Florida Educational Equity Act, Fla. Stat. § 1000.05 *et seq.*; the Florida Administrative Code; the State Board of Education Rules; the Rules of the School Board of Miami-Dade County; and the School Board of Miami-Dade County Bylaws & Policies.

48.     Each of Defendant's officials, administrators, agents, and employees who received notice of Meyers' dangerous sexual propensities, including the Superintendent, the Principals and Assistant Principals of Krop High School and Palmetto High School, Meyers' wife and fellow teacher, and various Schools Police officers had the authority, collectively or individually, to initiate corrective action to remove Meyers and/or to supervise Meyers so as to prevent the risk he posed to female students.

49.     Defendant failed to take appropriate action to either remove or appropriately supervise Meyers.

50.     At all relevant times, Defendant failed to conduct a prompt, impartial, reasonable, reliable, and thorough investigation of the complaints against Meyers by employees trained and experienced in handling sexual discrimination complaints, as well as the applicable federal and Florida laws and Defendant's rules, regulations, policies, and procedures.

51.     At all relevant times, Defendant also failed to establish and institute sufficient corrective measures to safeguard its students from the risk of further sexual abuse, molestation, and exploitation by Meyers. This includes, but is not limited to: (i) Defendant's failure to sufficiently limit, restrict, supervise, and monitor Meyers' behavior, communications,

interactions, and relations with female students; (ii) Defendant's failure to take precautions that were sufficient to prevent further sexual predation upon female students of the School District by Meyers; and (iii) Defendant's failure to otherwise abide by federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documenting, and redressing sexual discrimination.

52.    At all relevant times, Defendant was deliberately indifferent to the known dangerous sexual and predatory propensities posed to female students of the School District by Meyers.

53.    Despite its actual notice of Meyers' dangerous propensities, Defendant reassigned Meyers from Krop High School to Palmetto High School and continued to allow him unfettered access to female students of the School District.  In doing so, and by subsequently permitting Meyers to continuing teaching despite further reports of misconduct, Defendant made an official decision to ignore the known danger of sexual abuse of female students under Defendant's care.

54.    As a result of Defendant's gross failures to adequately respond to its actual notice of Meyers' sexual discrimination against female students, Plaintiff was sexually abused and harassed by Meyers.

55.    As a further result, Plaintiff has suffered, and continues to suffer, substantial injuries, harm, and damages.  This includes, but is not limited to, severe and permanent emotional, psychological, and physical injuries, pain and suffering, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal life.  Such harms and injuries are continuing and permanent.  Plaintiff has also undergone medical and psychological treatment and incurred medical and other expenses.

WHEREFORE, Plaintiff demands compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and

such other relief as this Court deems just and proper.

## COUNT II

### Violation of 42 U.S.C. § 1983
### (Policy, Practice, and Custom Causing Constitutional Harm)

56.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

57.     Pursuant to the Equal Protection Clause, U.S. Const. amend. XIV, § 1, Plaintiff had a constitutional right to bodily integrity and to be free from sex discrimination, including sexual abuse, molestation, exploitation, and harassment.

58.     At all relevant times, Defendant had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately. Defendant also had an affirmative constitutional duty to protect Plaintiff's rights, including protecting Plaintiff from sexual abuse by its agents and employees.

59.     At all relevant times, Defendant was the final policymaker for the School District and had the authority to make decisions and/or adopt courses of action in response to complaints about sexual misconduct by its agents and employees, including Meyers.

60.     At all relevant times, Defendant had a duty to promptly and adequately report, and then safeguard its students from the risk of further sexual abuse, molestation, and exploitation by its agents and employees, including Meyers, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures. *See, e.g.*, Florida K-20 Education Code, Fla. Stat. § 1000.01 *et seq.*; Florida Educational Equity Act, Fla. Stat. § 1000.05 *et seq.*; the Florida Administrative Code; the State Board of Education Rules; the Rules of the School Board of Miami-Dade County; and the School Board of Miami-Dade County Bylaws & Policies.

61. Nevertheless, at all relevant times, Defendant had a longstanding policy, practice, and custom of lax investigation and inadequate response to reports that its agents and employees had dangerous sexual propensities toward female students of the School District. Specifically, Defendant had a custom of lax investigation and inadequate response to the reports that Meyers was sexually preying upon current and former female students of the School District.

62. At all relevant times, Defendant failed to conduct a prompt, impartial, reasonable, reliable, and thorough investigation of the complaints against Meyers by employees trained and experienced in handling sexual discrimination complaints, as well as the applicable federal and Florida laws and Defendant's rules, regulations, policies, and procedures.

63. At all relevant times, Defendant also failed to establish and institute sufficient corrective measures to safeguard its students from the risk of further sexual abuse, molestation, and exploitation by Meyers. This includes, but is not limited to: (i) Defendant's failure to sufficiently limit, restrict, supervise, and monitor Meyers' behavior, communications, interactions, and relations with female students; (ii) Defendant's failure to take precautions that were sufficient to prevent further sexual predation upon female students of the School District by Meyers; and (iii) Defendant's failure to otherwise abide by federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documenting, and redressing sexual discrimination.

64. Defendant's longstanding policy, practice, and custom are reflected in its gross failures to adequately investigate and respond to the numerous complaints that Meyers was sexually preying upon current and former female students of the School District.

65. At all relevant times, Defendant had an official policy, practice, and custom of being deliberately indifferent to the known dangerous sexual and predatory propensities posed to female students of the School District by Meyers.

66. Despite its actual notice of Meyers' dangerous propensities, Defendant's official policy, practice, and custom was to reassign Meyers from Krop High School to Palmetto High School, thereby continuing to allow him unfettered access to female students of the School District. In doing so, and by subsequently permitting Meyers to continuing teaching despite further reports of misconduct, Defendant made an official decision to ignore the known danger of sexual abuse of female students under Defendant's care by Meyers.

67. Defendant's official policy, practice, and custom were established with deliberate indifference to their consequences.

68. As a result of Defendant's official policy, practice, and custom, Plaintiff was sexually abused and harassed by Meyers.

69. As a further result, Plaintiff has suffered, and continues to suffer, substantial injuries, harm, and damages. This includes, but is not limited to, severe and permanent emotional, psychological, and physical injuries, pain and suffering, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal life. Such harms and injuries are continuing and permanent. Plaintiff has also undergone medical and psychological treatment and incurred medical and other expenses.

WHEREFORE, Plaintiff demands compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as this Court deems just and proper.

### COUNT III

**Violation of 42 U.S.C. § 1983**
**(Deficient Training and Supervisory Practices Causing Constitutional Harm)**

70. Plaintiff repeats and realleges the allegations in paragraphs 1 through 42 as if fully set forth herein.

71. Pursuant to the Equal Protection Clause, U.S. Const. amend. XIV, § 1, Plaintiff had a constitutional right to bodily integrity and to be free from sex discrimination, including sexual abuse, molestation, exploitation, and harassment.

72. At all relevant times, Defendant had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately. Defendant also had an affirmative constitutional duty to protect Plaintiff's rights, including protecting Plaintiff from sexual abuse by its agents and employees.

73. At all relevant times, Defendant had a duty to adequately train and supervise its agents and employees about the risks of sexual abuse and harassment of students under Defendant's care, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures.  *See, e.g.*, Florida K-20 Education Code, Fla. Stat. § 1000.01 *et seq.*; Florida Educational Equity Act, Fla. Stat. § 1000.05 *et seq.*; the Florida Administrative Code; the State Board of Education Rules; the Rules of the School Board of Miami-Dade County; and the School Board of Miami-Dade County Bylaws & Policies.

74. Nevertheless, at all relevant times, Defendant grossly failed to adequately train and supervise its agents and employees about the risks of sexual abuse and harassment of students under Defendant's care.

75. Indeed, despite knowing that Meyers posed a serious danger of sexual misconduct to female students of the School District, Defendant grossly failed to adequately supervise Meyers, thereby continuing to allow him unfettered access to female students on school premises.  Among other things, Defendant allowed Meyers to spend substantial time alone with female students one-on-one in his classroom before, during, and after school, sometimes with the door locked.

76. In addition to its gross failure to adequately supervise Meyers, Defendant also had grossly inadequate practices with respect to training its agents and employees to adequately report, investigate, and respond to complaints of sexual misconduct to protect the students under its care from sexual abuse and harassment. This was Defendant's official practice throughout the School District.

77. By establishing and implementing grossly inadequate official practices with respect to training and supervising its agents and employees about the risks of sexual abuse and harassment of students under Defendant's care, Defendant was deliberately indifferent to the constitutional rights of the students to bodily integrity, including the right to be free from sexual abuse.

78. As a result of Defendant's grossly inadequate official policies and practices, Plaintiff was sexually abused and harassed by Meyers.

79. As a further result, Plaintiff has suffered, and continues to suffer, substantial injuries, harm, and damages. This includes, but is not limited to, severe and permanent emotional, psychological, and physical injuries, pain and suffering, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal life. Such harms and injuries are continuing and permanent. Plaintiff has also undergone medical and psychological treatment and incurred medical and other expenses.

WHEREFORE, Plaintiff demands compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial.

Respectfully submitted,

By: _/s/ Ronald P. Weil_____
Ronald P. Weil (FBN 169966)
rweil@weilquaranta.net
Mark A. Schweikert (FBN 70555)
mschweikert@weilquaranta.net
**WEIL QUARANTA, P.A.**
200 South Biscayne Boulevard
Southeast Financial Center, Suite 900
Miami, Florida 33131
T: (305) 372-5352
F: (305) 372-5355

*Attorneys for Plaintiff*